# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

DAVID WHITMORE, )
)
        Petitioner, )
)
v. ) Case No. CIV-10-1347-M
)
JUSTIN JONES, DIRECTOR, )
)
        Respondent. )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, brings this action pursuant to 28 U.S.C. § 2241 seeking a writ of habeas corpus. A response to the amended petition has been filed, and Petitioner has replied. The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended that the amended petition be denied.

**I.**     **Background**

Petitioner is in the custody of the Oklahoma Department of Corrections (ODOC) and incarcerated at Lawton Correctional Facility in Lawton, Oklahoma. Petitioner is seeking habeas corpus relief for alleged due process violations in the course of a prison disciplinary proceeding resulting in the revocation of 120 earned credits.

On December 9, 2009, a disciplinary hearing officer found Petitioner guilty of Present in an Unauthorized Area, a Class A offense. *See* Response, Exhibit 2 at 10, Disciplinary Hearing Report. The disciplinary hearing officer based his decision on the offense report submitted by Sergeant Roy Owens on October 9, 2009. Owens reported that on that date he

"saw offender Whitmore by gym north" and that when he asked Petitioner what he was doing there, Petitioner "got aggressive" and was escorted away and told to return to his housing unit which Petitioner did. *See* Response, Exhibit 2 at 1, Department of Corrections Offense Report.

The Offense Report form states that the matter is "[t]o be referred [for investigation] within 24 hours from the time the violation is reported." *See id*. It does not appear from the record that this directive was followed. The record shows the investigation was commenced on November 2, 2009, by Investigating Officer Kirkpatrick. *See* Response, Exhibit 2 at 2, Investigator's Report. The Investigator's Report has a box checked "NO" next to the statement: "Offender requested documentary evidence." *See id*. Contrary to this statement, however, Petitioner states that he verbally told Kirkpatrick he wanted video surveillance footage which, Petitioner contends, showed he was not in an unauthorized area as reported by Sergeant Owens.

In addition, Petitioner submitted a written Request to Staff on November 5, 2009. He submitted the Request to Staff to Investigating Officer Kirkpatrick stating: "Ma'am, I just wanted to put in writing that I requested the camera footage as evidence for the misconduct that I received from Sgt. Owen, he said that I was agressive [sic] and that he had to take me to the 4 way, and that's not true." *See* Petitioner's Reply, Exhibit C, Offender Grievance Process, Request to Staff. November 5, 2009, was the 28th day following the incident on October 9th.

On November 12, 2009, Kirkpatrick responded stating: "Upon review of CCTV, the video for this date (10-9-09) is not available due to the camera system being on a continuous loop." *See id*. Thereafter, Kirkpatrick noted on the Investigator's Report as "additional facts discovered by the Investigator" the following: "will bring statements to hearing, sent a request to staff requesting video evidence after the investigation was completed – due to camera system being on a continuous loop, the video for that date is no longer available 11-12-09." *See* Investigator's Report.[1]

As set forth, Petitioner was found guilty of the offense on December 9, 2009. He appealed the decision to the facility head who affirmed the conviction. *See* Disciplinary Hearing Report. Petitioner then submitted a misconduct appeal. *See* Response, Exhibit 3, Offender's Misconduct Appeal Form. As grounds for appeal, he claimed, as pertinent to this habeas action, that he was not permitted to present relevant documentary evidence and was not provided a hearing officer with no direct involvement. *See id*. Petitioner referenced the "camera footage" he had requested and stated that it would prove the reporting officer, Sergeant Owens, was lying. *See id*. at 2. Petitioner's appeal was denied and the action of the facility head affirmed. *See id*. at 3 and 6.

Petitioner then sought relief in the Oklahoma courts. He filed a Petition for Judicial Review pursuant to Okla. Stat tit. 57, § 564.1. On May 17, 2010, the state district court

---

[1] Officer Kirkpatrick's affidavit states that the camera system "only hold[s] date to 28 days," and the affidavit of the assistant maintenance manager to LCF, John Trenholm, states the "DVR's are kept for approximately 30 days." *See* Response, Exhibit 4.

denied relief. *See* Response, Exhibit 6, Order Denying Relief on Petition for Judicial Review. Petitioner then filed an appeal to the Oklahoma Court of Criminal Appeals (OCCA). On July 7, 2010, the OCCA affirmed the district court's denial of relief. *See* Response, Exhibit 8, OCCA Order Affirming District Court Order Reviewing Prison Disciplinary Proceeding Resulting in Revocation of Earned Credits.

## II.    Petitioner's Grounds for Federal Habeas Relief

Petitioner claims that he was denied due process in the prison disciplinary proceedings. He claims he was not allowed to "present documentary evidence in the form of video footage." He further claims the hearing officer was biased. *See* Amended Petition at 5-7. Petitioner raised these same claims before the Oklahoma courts and, as set forth, relief was denied.[2]

## III.    Analysis

"It is well-settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Howard v. United States Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007) (*quoting Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996)). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the

---

[2] The Tenth Circuit Court of Appeals has held that habeas actions brought pursuant to § 2241 are reviewed *de novo*. *See Walck v. Edmondson*, 472 F.3d 1227,1235 (10th Cir.2007). Thus, the "deference normally accorded state court judgments under [28 U.S.C.] § 2254 does not apply." *Id*.

4

full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). An inmate receives due process in conjunction with an institutional disciplinary proceeding if he is given: (1) advance written notice of the disciplinary charge; (2) an opportunity, consistent with institutional safety and correctional goals, to present witnesses and documentary evidence; and (3) a written statement of the evidence relied on and the reasons for any disciplinary action. *Superintendent, Massachusetts Correctional Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). If those protections are provided and there is "some evidence" to support the resolution of the disciplinary charge, then the Due Process Clause's procedural requirements have been satisfied. *Id.*; *see also Mitchell*, 80 F.3d at 1445 (noting that the scope of a court's due process review of a prison disciplinary proceeding is limited to determining whether *Wolff's* requirements are met and there is some evidence to support the decision).

A. **Video Surveillance Evidence**

In Petitioner's first ground for relief, he contends he was denied the opportunity to present documentary evidence, specifically, video surveillance footage which he contends would show Sergeant Owens lied about the alleged conduct of Petitioner which led to his disciplinary conviction. In other words, Petitioner alleges the videotape would have been exculpatory.

In *Howard*, a federal prisoner challenged his prison disciplinary conviction on due process grounds based on prison officials' refusal to provide videotape evidence requested by the prisoner. The record, though not conclusive, provided "strong inferential support"

5

that the prisoner requested the videotape at the hearing before the disciplinary hearing officer. *Id*., 487 F.3d at 813 n.3. The prisoner requested the videotape alleging it would show he acted in self-defense and, therefore, might exonerate him of the charges brought against him.

The Bureau of Prisons (BOP) refused to provide the videotape to the prisoner and on this basis, the prisoner alleged a violation of his due process rights. The BOP responded that the prisoner had failed to demonstrate the videotape existed. The BOP further responded that even if the videotape did exist, its presentation would be "needlessly cumulative" because the hearing officer based his decision on staff reports and prison staff are legally obligated to tell the truth in disciplinary proceedings. *Id*. at 814.[3] The Tenth Circuit rejected the BOP's arguments. As to the existence of the videotape, the Court noted "both that the Bureau has carefully refrained from denying that any videotape exists and that proof of this point is solely within its control." *Id*. As to the cumulative nature of the evidence, the Court also rejected this argument stating: "[t]his Orwellian argument would neatly dispose of any need to allow inmates to present evidence contradicting statements of prison staff, a conclusion we are not prepared to accept." *Id*.

---

[3]In *Howard*, as in this case, prison officials did not contend that producing the requested videotape would be "unduly hazardous to institutional safety or correctional goals." *Howard*, 487 F.3d at 814 (*quoting Wolff*, 418 U.S. at 566).

The Tenth Circuit concluded that the prisoner successfully alleged a due process violation. However, the Tenth Circuit remanded the matter to the district court for a determination as to whether the violation was nonetheless harmless error. *See id*. at 815.[4]

In *Howard*, the Court found that the following facts established a due process violation based on prison officials' unjustified refusal to produce videotape surveillance: (1) the prisoner made a timely request for the videotape at the disciplinary hearing; (2) the videotape contains exculpatory evidence; and (3) producing the videotape would not jeopardize the institution's safety and correctional goals. *Howard* at 813-814. In addition where, as here, the videotape no longer exists, the prisoner must demonstrate prison officials acted in bad faith in the destruction of the evidence. *See Godlock v. Fatkin*, 84 Fed. Appx. 24, 28 (10th Cir. Dec. 16, 2003) (unpublished op.) (recognizing the "treacherous task" a court

---

[4]On remand, the district court determined that any violation was harmless error:

> After a careful review, the court concludes that any violation of petitioner's procedural due process rights must be considered harmless error. The court is firmly convinced that the refusal to produce and review videotape from the security cameras did not affect petitioner's substantial rights or the verdict of the disciplinary hearing officer. The most persuasive evidence before the court demonstrates: 1) that the security cameras at the institution did not record pertinent footage of the incident; and 2) any recording made by the cameras at the institution was recorded over and destroyed before petitioner requested that the tapes be produced and examined. Petitioner's assertions are self-serving, unsupported generalizations or rhetorical questions that do not provide adequate grounds for an evidentiary hearing or a contrary conclusion.

*Howard v. United States Bureau of Prisons*, 2010 WL 5392718 at * 3 (D. Kan. Dec. 21, 2010) (unpublished op.), *aff'd*, 2011 WL 3203421 (10th Cir. July 28, 2011) (unpublished op.).

faces in determining import of permanently lost material that is potentially exculpatory and requiring showing of prison officials' bad faith destruction of videotape that prisoner claimed was exculpatory) *citing Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) ("[U]nless a criminal defendant can show bad faith . . . failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

Assuming Petitioner has alleged facts sufficient to demonstrate he timely requested the videotape, the videotape was exculpatory and production of the videotape would not jeopardize safety and correctional goals, Petitioner's claim fails because he does not allege prison officials acted in bad faith. Nor does the record contain evidence sufficient to create an inference of bad faith. While prison officials perhaps could have addressed his request for the videotape in a more timely fashion, the record presented does not show their failure to do so was the result of any improper motive. Rather, the record clearly demonstrates the videotape was recorded over in the normal course of prison operations as part of the video system's "continuous loop." *See* Response, Exhibit 4, Affidavit of Brandy Kirkpatrick, ¶ 2 and Affidavit of John Trenholm, ¶¶ 1-2. Accordingly, Petitioner's due process claim is without merit and should be denied.

### B.     Impartial Decisionmaker

Petitioner also claims he was denied an impartial decisionmaker. Petitioner alleges that immediately after the reporting officer confronted him about the misconduct charge, he and the reporting officer discussed the issue with Rick Underwood who later acted as the

hearing officer at the disciplinary hearing. Petitioner contends the hearing officer was biased because he was involved and witnessed these events occurring immediately after the incident.

"An impartial decisionmaker is a fundamental requirement of due process" and "should be decided on a case-by-case basis." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (quotations omitted). But a due process violation occurs only when the facts demonstrate "the risk of unfairness is intolerably high." *Id*. (citation omitted). Moreover, "'because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated.'" *Id*. (*quoting Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 518 (10th Cir.1998)).

Under the particular circumstances of this case, Petitioner has failed to allege facts sufficient to demonstrate the risk of unfairness was intolerably high or the existence of actual bias. The hearing officer did not witness the incident itself, *see* Response, Exhibit 5, Affidavit of Rick Underwood ("Underwood Affidavit), ¶ 3, and Petitioner does not contend otherwise. Petitioner claims only that the hearing officer received information about the offense immediately following its occurrence. The hearing officer received this information because he was responsible for the housing unit to which Petitioner was assigned at that time. *See* Underwood Affidavit, ¶ 3. The mere receipt of this information, without more, is insufficient to establish bias. *Compare Wilson v. Evans*, 172 Fed. Appx. 227, 229 (10th Cir. March 22, 2006) (unpublished op.) ("fact that the same person referred Petitioner's action for investigation, affirmed his guilt . . . and denied Petitioner's appeal to the facility head"

did not establish bias). *See also Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir.1986) ("'The mere exposure to evidence presented in nonadversary investigative procedures is insufficient in itself to impugn the fairness' of a later adversary hearing.") (*quoting Withrow v. Larkin*, 421 U.S. 35, 55 (1975)). Therefore, Petitioner's claim that his due process rights have been violated based on the alleged bias of the hearing officer is without merit and should be denied.

## RECOMMENDATION

It is recommended that the Amended Petition [Doc. #15] be denied.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of this Court by September __21st__, 2011. *See* Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred by the District Judge in this matter and terminates the referral.

ENTERED this __31st__ day of August, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE